## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **VIRGINIA STONE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  1:08-CV-1139-VEH** |
| | } | |
| **JOHN E. POTTER,** | } | |
| **POSTMASTER GENERAL,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

### I.    INTRODUCTION

Plaintiff Virginia Stone ("Stone") initiated this Title VII job discrimination lawsuit against Defendant John E. Potter, in his official capacity as the Postmaster General of the United States, on June 25, 2008, relating to her employment with the United States Postal Service ("Postal Service").  (Doc. 1).  Stone filed her amended complaint (Doc. 5) on July 24, 2009.

This case is before the court on Defendant's Motion for Summary Judgment (Doc. 18) filed on August 10, 2009.  Defendant's brief and evidentiary materials in support of summary judgment were also filed on August 10, 2009.  (Docs. 18-21).

Because Stone is proceeding *pro se*, on August 12, 2009, the court provided her with special notice regarding her rights and obligations in opposing Defendant's

motion.  (Doc. 23).  Stone filed her responsive materials on August 28, 2009.  (Docs. 28-29).

Defendant filed his reply (Doc. 30) on September 15, 2009.  Accordingly, Defendant's Motion for Summary Judgment is now under submission.  The court has carefully reviewed the record on summary judgment and concludes that Defendant's Motion for Summary Judgment is due to be granted for the reasons explained below.

## II.     STATEMENT OF FACTS[1]

### A.     Proceedings in Administrative Case No. 4H-350-0171-01

#### 1.     Scope of Case

Stone initially contacted an EEO counselor on August 21, 2001.  (Doc. 20 at Ex. 1 at Ex. A at 101); AF No.1.[2]  As the basis for this contact, Stone "alleged she

---

[1]     Whenever the facts are in dispute, they are stated in the manner most favorable to the non-moving party.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  Therefore, these are the facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

[2]     The designation "AF" stands for admitted fact and indicates a fact offered by Defendant that Stone has admitted in her written submissions on summary judgment, her EEO deposition, or by virtue of any other evidence offered in support of her case.  Whenever Stone has adequately disputed a fact offered by Defendant, the court has accepted her version.  The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Defendant's initial statement of facts as set forth in Doc. 19.

was discriminated against because of her race (Black), sex (Female) and retaliation (Prior EEO activity) on July 7, 2001, when she was not schedule[d] to report for duty." (Doc. 20 at Ex. 1 at Ex. A at 101); AF No. 8.

Stone filed her formal complaint against the Postal Service in Administrative Case No. 4H-350-0171-01 on or about October 17, 2001. (Doc. 20 at Ex. 1 at Ex. B at 59; *id.* at Ex. E at 1). Another issue accepted for EEO investigation was whether Stone was denied the opportunity to pick routes of her choice on the carrier matrix.

---

In her brief, Stone has not directly responded to Defendant's statement of facts as required under Appendix II of the court's Uniform Initial Order. (Doc. 10). Moreover, the court expressly cautioned Stone that the special Notice and Scheduling Order (Doc. 23) entered on August 12, 2009, did "not change any of the requirements of Appendix II to the court's Uniform Initial Order, which was previously entered in this case." (*Id.* at 1). As a result of Stone's omission and by operation of Appendix II, Defendant's facts set forth in (Doc. 19) are deemed admitted for the purposes of summary judgment. (*See also* Doc. 30 at 1-2).

At the same time, this court is aware that any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986). Stone's claims were initially brought pursuant to a sworn complaint. (Doc. 1). Also, she has attached several previously sworn statements relating to her claims as part of her evidence in opposition to summary judgment. (*See, e.g.*, Doc. 29 at Ex. 7 at 5-6). Accordingly, in formulating the following statement of facts, the court has considered any specific admissible facts included in these sworn documents that are material to its decision on summary judgment.

Because of the voluminous number of facts asserted by the parties on summary judgment, the court has endeavored to limit its recitation to those facts it finds to be critical to its decision. Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

(Doc. 20 at Ex. 1 at Ex. B at 62); AF No. 8.

### 2.   Commission Dismisses Case Without Prejudice per Stone's Request

On the motion of Stone, the Equal Employment Opportunity Commission (the "Commission") dismissed her administrative case without prejudice on January 15, 2003, due to her then "<u>present inability to participate in the administrative hearing process</u>" and held her complaint "in abeyance pending possible resolution by voluntary settlement or the availability of the Complainant to participate in the hearing process." (Doc. 20 at Ex. 2 at 1 (emphasis added)); AF No. 9.

### 3.   Activities Occurring While Case Dismissed

In April 2003, the Postal Service sent Stone a Notice to Report to work. (Doc. 20 at Ex. 3 at 1 ("Your unsubstantiated absence from duty since March 6, 2003 has become a matter of concern)); AF No. 10.  In response, Stone's former attorney, Amos L. Kirkpatrick, sent a packet of documentation to the Postal Service the next month, claiming that Stone was disabled.  (*Id.* at Ex. 4 at 1-11); AF No. 11. The following month, in June 2003, Stone apparently requested on her own behalf that the Postal Service mail her a nervous disorder form to be completed by her treating physician.  (Doc. 20 at Ex. 5 at 1 ("Mailed nervous disorder form as requested by Virginia Stone.")); AF No. 12.

Then, on October 21, 2003, a grievance was settled on Stone's behalf, under circumstances providing that she would return to work if she provided sufficient medical documentation within sixty days, or that she could otherwise resign her employment for personal reasons.  (Doc. 20 at Ex. 6 at 1-2); AF No. 13.  When the Postal Service did not ever receive any medical documentation to support Stone's return to work, she was removed from her employment, effective December 20, 2003.  (Doc. 20 at Ex. 7 at 1); AF No. 14.

In response, Stone's physician resent medical information to the Postal Service substantiating her clearance to return to work.  (Doc. 20 at Ex. 8 at 1-8); AF No. 15.  More specifically on January 2, 2004, Stone's physician indicated that Stone was "fit for full duty without hazard to self or others," effective December 19, 2003.  (Doc. 20 at Ex. 8 at 2); AF No. 16.

On January 15, 2004, Stone's doctor reiterated that she was able to return to work without restrictions, and indicated further that any recurrence of Stone's prior medical conditions was "not likely."  (Doc. 20 at Ex. 8 at 3-4); AF No. 17.   At that time, Stone did not move to have her EEO case reopened.  (Doc. 21 at Ex. 15 at 1); AF No. 18.

On March 30, 2004, Stone filed a claim for social security disability benefits.  (Doc. 5 ¶ 35); AF No. 19.  On April 12, 2004, Stone filed a slip-and-fall claim against

Winn-Dixie Stores in the Circuit Court of Calhoun County. (Doc. 21 at Ex. 9 at 11-12; *id.* at Ex. 10 at 1-3); AF No. 20. During that case, Stone was deposed, discovery was propounded on her behalf, and a Motion to Compel pursued. (Doc. 21 at Ex. 10 at 1-2); AF No. 21.

In July 2004, Stone filed a claim for compensation with the U.S. Department of Labor, asserting allegations of discrimination. (Doc. 21 at Ex. 11 at 1-2); AF No. 24. On June 14, 2005, Stone filed another lawsuit, this one concerning a car wreck. (Doc. 21 at Ex. 12 at 1-2); AF No. 25. Stone's negligence suit involved discovery efforts on both sides, including a notice of taking of Stone's deposition in May, 2006. (Doc. 21 at Ex. 12 at 1-2); AF No. 26. Also, a motion opposing summary judgment was filed on Stone's behalf. (Doc. 21 at Ex. 12 at 2); AF No. 26.

Finally, Stone testified that she filed another slip and fall case against her daughter's landlord in small claims court at some time in 2006 or early 2007. (Doc. 21 at Ex. 9 at 5-6, 8-9 ("MS. KELLETT: So, that was in the calendar year of 2006? MS. COLLINS: Yes, I think so. 2006 or early 2007. I think it was this year, correct, Mrs. Stone? THE WITNESS: It was like the end of the year or the beginning of the year.") (emphasis added)); AF No. 27.

### 4.    Commission Reopens Case per Stone's Request

Almost four years after voluntarily dismissing Administrative Case No.

6

4H-350-171-01 without prejudice, on December 18, 2006, Stone finally indicated that she was medically able to participate in her EEO complaint against the Postal Service, by requesting that her files be returned to the Commission for processing.  (Doc. 21 at Ex. 14 at 1); AF No. 30.

### 5.   Commission Closes Reopened Case Due to Laches

While the Commission initially reopened Stone's case, it ultimately dismissed Stone's complaint on July 9, 2007, finding it barred by laches because of the following:  Stone was able to proceed with the prosecution of her EEO complaint years before she sought to reopen the matter; in the interim, a Postal Service witness died; and Stone offered no explanation for the elapse of roughly four years before requesting a reinstatement of the case.  (Doc. 21 at Ex. 15 at 2 ("The Complainant has presented no justification for waiting approximately four years to request that this complaint be reopened.")); AF No. 31.

On August 20, 2007, Stone appealed the dismissal to the Commission's Office of Federal Operation ("OFO"), and on January 29, 2008, the OFO affirmed the decision.  (Doc. 21 at Ex. 16 at 2 ("After a review of the record in its entirety, including consideration of all statements submitted on appeal, it is the decision of the Equal Employment Opportunity Commission to affirm the agency's final order,

because the Administrative Judge's July 9, 2007 dismissal was appropriate given the length of time complainant took before seeking to reinstate her complaint.")); AF No. 32.  On February 28, 2008, Stone requested reconsideration of OFO's decision to affirm (Doc. 21 at Ex. 17), and on March 28, 2008, that request was denied.  (Doc. 21 at Ex. 18 at 1); AF No. 33.

**B.     Proceedings in Administrative Case No. 4H-350-0081-01**

Stone also filed Administrative Case No. 4H-350-0081-01 in the first part of 2001.  (Doc. 5 at Ex. A at 1); AF No. 46.   As part of Administrative Case No. 4H-350-0081-01, Stone formally complained that she was not paid for working on Christmas Day 2000.  AF No. 46.

Stone also expressed that she was offended by Diane Mendez's February 2, 2001, selling of Aunt Jemima dolls.  AF No. 47.  Additionally, Stone objected to her route assignments with respect to February 20, and February 21, 2001.  AF Nos. 50-55.  Stone settled the administrative complaint addressing these three separate areas with the Postal Service during a mediation held on April 3, 2001.  (Doc. 5 at Ex. A at 13, 17-19); AF Nos. 46-47, 55.

**C.     Proceedings in Administrative Case No. 4H-350-0156-06**

On September 21, 2006, more than two and a half years after her removal from federal employment on December 20, 2003, Stone additionally sought informal EEO

counseling for her termination.  (Doc. 20 at Ex. 1 at Att. E at 1); AF No. 103.  Stone

never filed a formal EEO complaint regarding her removal, and this EEO complaint

file was closed on December 11, 2006.  (Doc. 20 at Ex. 1 at Att. E at 1); AF No. 104.

## III.   STANDARD OF REVIEW

Summary judgment is proper only when there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R . Civ. P.

56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved

in favor of the nonmovant.  *See Fitzpatrick*, 2 F.3d at 1115. A dispute is genuine "if

the evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

"Once the moving party has properly supported its motion for summary

judgment, the burden shifts to the nonmoving party to 'come forward with specific

facts showing that there is a genuine issue for trial.'"  *International Stamp Art, Inc.*

*v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).  "If the movant bears

the burden of proof on an issue, because, as a defendant, it is asserting an affirmative

defense, it must establish that there is no genuine issue of material fact as to any

element of that defense."  *International Stamp*, 456 F.3d at 1274 (citing *Martin v.*

*Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181, 1184 (11th Cir. 1984).  Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case,  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases in which there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision.  Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a

"motivating factor" for the employment action, even though defendant's legitimate

reason may also be true or have played some role in the decision.   *McDonnell*

*Douglas*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S.

at 101-02.

## IV.   ANALYSIS

### A.   Doctrine of Laches

Defendant initially argues that Stone's amended complaint is barred by the

doctrine of laches.  In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101

(2002), the Supreme Court explained:

> In addition to other equitable defenses, therefore, an employer
> may raise a laches defense, which bars a plaintiff from maintaining a suit
> if he unreasonably delays in filing a suit and as a result harms the
> defendant.  This defense " 'requires proof of (1) lack of diligence by the
> party against whom the defense is asserted, and (2) prejudice to the party
> asserting the defense.' " *Kansas v. Colorado*, 514 U.S. 673, 687, 115 S.
> Ct. 1733, 131 L. Ed. 2d 759 (1995) (quoting *Costello v. United States*,
> 365 U.S. 265, 282, 81 S. Ct. 534, 5 L. Ed. 2d 551, (1961)).  We do not
> address questions here such as "how-and how much-prejudice must be
> shown" or "what consequences follow if laches is established." 2
> Lindemann 1496-1500.  We observe only that employers may raise
> various defenses in the face of unreasonable and prejudicial delay.

*Morgan*, 536 U.S. at 121-22 (footnote omitted).

Here, the court agrees with Defendant that laches should bar Stone from any

further proceedings relating to the claims asserted in Administrative Case No.

4H-350-0171-01.  In particular, the record demonstrates Stone's lack of diligence in

reopening her dismissed case, despite being medically cleared by her doctor to return

to work and actively pursuing and participating in several other claims and lawsuits,

while the EEO case was on hold.  In sum:

> In 2003, Plaintiff participated in and settled a grievance with the Postal
> Service . . . .  In 2004, Plaintiff returned to work at the Postal Service;
> filed a Social Security disability claim; initiated and litigated a slip and
> fall claim against Winn Dixie in state court; and filed a claim for
> disability compensation against the Department of Labor for alleged
> discrimination in her federal workplace.  In 200[6], Plaintiff initiated
> and litigated two other lawsuits in state court: one a slip and fall claim
> against her daughter's landlord and the other an automobile accident
> case.

(Doc. 19 at 23-24).[3]

Moreover, a witness for the Postal Service died in the interim and Stone has

offered no reasonable justification for the substantial delay in seeking to reopen the

case.  While Stone attempts to argue that laches should not apply because her EEO

case was stayed "without any noted restrictions" (Doc. 28 at 44; *id.* at 44-47), this

misstates the express reason for the stay—Stone's inability to medically proceed with

---

[3]  The court notes that, based upon Stone's deposition testimony, the record is
unclear as to the exact time in which Stone's second slip and fall lawsuit was initiated,
*i.e.*,  late 2006 or early 2007.  However, even if this subsequent slip and fall case was
filed after Stone sought to reopen Administrative Case No. 4H-350-0171-01, the
court is still persuaded that the doctrine of laches would apply based upon the totality
of Stone's other litigious activities.

the EEO administrative process—the severity of which medical impediment the record does not substantiate as lasting from January 15, 2003, the date of the case's dismissal without prejudice, through December 18, 2006, the date on which Stone finally sought to reopen her case.

Under such circumstances, the equitable defense of laches is appropriately applied to bar those claims and allegations stemming from Administrative Case No. 4H-350-0171-01. In particular, the record of Stone's multiple claim-related activities in numerous other matters along with her medical clearance to return to work, effective December 19, 2003, establishes that, while she had regained her ability to proceed with prosecuting Administrative Case No. 4H-350-0171-01, she instead elected to sleep on her rights and unreasonably postpone the reopening of the case for a period of nearly three years, resulting in actual prejudice to the Postal Service.

### B.    Doctrine of *Res Judicata*

Defendant also asserts that the doctrine of *res judicata* applies to the claims and allegations that formed Administrative Case No. 4H-350-0081-01 as they were all settled in mediation. These include the failure-to-pay, the Aunt Jemima dolls, and the route assignment allegations.

The court agrees that *res judicata* operates to bar Stone from pursuing these claims in federal court because they were settled at the administrative level:

13

> In determining the *res judicata* effect of an order of dismissal based upon a settlement agreement, we should also attempt to effectuate the parties' intent. The best evidence of that intent is, of course, the settlement agreement itself. Consequently, the scope of the preclusive effect of the 1977 Dismissal should not be determined by the claims specified in the original complaint, but instead by the terms of the Settlement Agreement, as interpreted according to traditional principles of contract law. *See W.J. Perryman & Co. v. Penn. Mut. Fire Ins. Co.*, 324 F.2d 791, 793 (5th Cir. 1963) ("The compromise, settlement and release are as conclusive as a judgment would have been if the claim had been litigated rather than compromised and settled. The dismissal with prejudice adds *res judicata* to the release as barring recovery by the appellant." (citation omitted; emphasis added)); *see also Barber v. Int'l Brotherhood of Boilermakers*, 778 F.2d 750, 758 (11th Cir.1985) ("[W]e respect the parties' clear contractual intent . . . to give the release preclusive effect. . . .").

*Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1289 (11th Cir. 2004) (emphasis added).

In this instance, the parties' intent is set forth in the settlement agreement applicable to Administrative Case No. 4H-350-0081-01 and expressly covers the failure-to-pay, the Aunt Jemima dolls, and the route assignment objections that Stone has attempted to reassert in this lawsuit. (Doc. 5 at Ex. A at 17). The signed resolution further states that it "constitutes a full and final settlement of all issues arising out of the subject matter" and that "by signing this agreement the counselee withdraws any and all pending EEO complaints and appeals relative to the subject matter of these complaints[.]" (Doc. 5 at Ex. A at 19). Accordingly, Stone's prior

14

settlement of  Administrative Case No. 4H-350-0081-01 with the Postal Service is properly afforded a preclusive effect under the doctrine of *res judicata* against any attempted revival or further prosecution of those resolved claims and allegations.

### C.    Failure to Exhaust Administrative Remedies

Defendant finally raises administrative exhaustion as a defense to  many of the allegations contained in Stone's amended complaint.  The court concurs that with the exception of only some limited areas,[4] Stone's noncompliance with 29 C.F.R. § 1614.105 operates to bar the claims she advances in this case.

As an employee of the Postal Service, Stone's ability to challenge alleged discriminatory acts are governed by administrative rules that differ in important respects from those applicable to employees in the private or public state sector.  One such unique rule is contained in § 1614.105, which addresses discrimination claims pursued by federal sector employees and provides in pertinent part:

>   (a)    Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a

---

[4] One such excepted area relates to Stone's set of allegations pertaining to July 7, 2001, which were timely preserved under § 1614.105.  However, as explained above in § IV.A., the court has separately concluded that any claims stemming from those circumstances relating to Administrative Case No. 4H-350-0171-01 are barred by the doctrine of laches.  The other excluded area involves Administrative Case No. 4H-350-0081-01, which claims this court has held are barred by *res judicata* in § IV.B., due to the parties' previously negotiated settlement.

complaint in order to try to informally resolve the matter.

(1)     An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

(2)     The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105 (emphasis added).  "Complaints alleging retaliation prohibited by these statutes [including Title VII] are considered to be complaints of discrimination for purposes of this part."  29 C.F.R. § 1614.103(a).

As its language expressly states, absent any grounds for equitable modification,[5] § 1614.105 requires that an aggrieved federal sector employee contact an EEO counselor within 45 days of a suspected discriminatory act.  *See, e.g., Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1305 (11th Cir. 2007) ("Counseling is the first-step corrective measure required by the nation's largest

––––––––––––––––––––

[5] Nothing contained in this record suggests that an extension of the 45-day time limit is appropriate here.

employer, the federal government, in all cases of sexual harassment.") (citing 29 C.F.R. § 1614.105(a)).

Consequently, as a general rule, a federal government employee is required to initiate contact with an EEO counselor within 45 days of the date of an adverse employment action she wishes to challenge.  The defendant bears the burden of showing a plaintiff's noncompliance with § 1614.105(a).  *See Brown v. Snow*, 440 F.3d 1259, 1265 (11th Cir. 2006) ("Snow bore the burden of establishing Brown's failure to comply with this regulation, and Snow failed to satisfy his burden.").  Also, "that regulation also provides an exception for complainants who acted in good faith, *id.* § 1614.105(a)(2)." *Brown*, 440 F.3d at 1265.

In *Shiver v. Chertoff*, 549 F.3d 1342 (11th Cir. 2008), the Eleventh Circuit explained § 1614.105's framework:

> Under Title VII and the Rehabilitation Act, <u>federal employees are required to initiate administrative review of any alleged discriminatory or retaliatory conduct with the appropriate agency within 45 days of the alleged discriminatory act</u>. *See id.*; 42 U.S.C. § 2000e-16(b); 29 C.F.R. § 1614.105(a)(1); *see also Mullins*, 228 F.3d at 1310-11 (applying the 45-day exhaustion requirement to federal employees raising claims under the Rehabilitation Act). When the discriminatory act results in a personnel action, the employee must contact an EEO counselor "within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The EEOC "shall extend the 45-day limit . . . when the individual shows . . . that he or she did not know and reasonably should not have [ ] known that the . . . personnel action occurred." 29 C.F.R. § 1614.105(a)(2). <u>Generally, when the claimant does not initiate contact</u>

17

> within the 45-day charging period, the claim is barred for failure to
> exhaust administrative remedies. *See Brown v. Snow*, 440 F.3d 1259,
> 1264-65 (11th Cir. 2006) (affirming the district court's determination
> that the defendant failed to establish that the plaintiff did not initiate
> contact within the 45-day charging period).

*Shiver*, 549 F.3d at 1344 (emphasis added).    In *Shiver*, the court ultimately concluded

that "Shiver [timely] contacted an EEO counselor within 45 days of January 5, 2005,

which was the date that he learned that his demotion had become effective" and

vacated the district court's order "finding that Shiver's action was time-barred." *Id.*

Just as with the 180-day period applicable to private Title VII charge filers (*see*

*Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 660 (11th Cir. 1993), *cert. denied*,

513 U.S. 814 (1994)), a court may toll the 45-day time period in the event that a

plaintiff has no reason to believe she was a victim of unlawful discrimination or on

the grounds of other equitable considerations. *See, e.g., Manning v. Carlin*, 786 F.2d

1108, 1109, 1108 (11th Cir. 1986) ("summarizing situations in which equitable

tolling of the limitations period under Title VII would be appropriate," and declining

to suspend exhaustion requirement despite postal service employee's claim that "he

was improperly intimidated by the threat of criminal prosecution").   However,

logically, a federal employee, like other Title VII litigants, has the burden of

establishing that tolling is appropriate. *Cf. Jackson v. Seaboard Coast Line R. Co.*,

678 F.2d 992, 1010 (11th Cir. 1982) (detailing applicable pleading and burden of

proof requirements for Title VII administrative preconditions applicable to private plaintiffs).  Further, absent a sufficient showing that would justify a modification of the deadline, if a federal government employee fails to timely notify an EEO counselor about her belief that she has been the victim of discrimination, she will be found to have failed to exhaust her administrative remedies under § 1614.105.

After a thorough review of the record, the court finds that, based upon the undisputed evidence, Stone has failed to satisfy the counseling requirements of § 1614.105 with respect to any remaining claims and allegations.  Further, the record does not present any basis for tolling the deadline or otherwise equitably modifying this administrative requirement.

More specifically in this instance, Defendant has established that Stone initially contacted an EEO counselor on August 21, 2001, in conjunction with Administrative Case No. 4H-350-0171-01.  This means that any events occurring prior to July 7, 2001, *i.e.*, 45 days before August 21, 2001, are time-barred by operation of § 1614.105 because Stone failed to timely contact an EEO counselor about them.

Additionally, even though Stone contacted the EEO counselor on August 21, 2001, she neither discussed nor received counseling for occurrences taking place on the following dates as substantiated by the EEO Dispute Resolution Specialist and unchallenged by Stone:  February 3, 17, 20, and 21, 2001; March 26 and 27, 2001;

19

May 16, 2001; July 16, 26, and 27, 2001; August 2001; and September 9, 2001.

(Doc. 20 at Ex. 1 at Ex. A at 104).   Therefore, as Stone did not receive any pre-

complaint counseling regarding any of these potential claims, they are similarly due

to be dismissed pursuant to § 1614.105 because Stone has failed to exhaust her

administrative remedies.

Moreover, while on September 21, 2006, Stone sought counseling concerning

her termination in connection with Administrative Case No. 4H-350-0156-06, the

meeting was well beyond § 1614.105's 45-day window, taking place more than two

and a half years after her removal from federal employment on December 20, 2003.

Accordingly, any claims and allegations relating to Stone's separation from federal

employment contained in her amended complaint are likewise barred due to Stone's

failure to timely exhaust her administrative remedies.

Finally, to the extent that Stone has attempted to insert other allegations of

discrimination or retaliation never previously brought to the attention of an EEO

counselor,  by way of either her brief or her amended complaint, they also are due to

be dismissed on the basis of § 1614.105.   In sum, any such potential claims

articulated for the first time in this court are all administratively stale.

## V.      CONCLUSION

Accordingly, for the foregoing reasons, Defendant's Motion for Summary Judgment is due to be granted.  The court will enter a separate order granting Defendant's Motion for Summary Judgment and dismissing Stone's case with prejudice.

**DONE** and **ORDERED** this the 15th day of October, 2009.


_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

21